IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIM TURNER,                                )
                                           )
              Plaintiff,                   )
                                           )        CIVIL ACTION
vs.                                        )
                                           )        FILE No.
RNDM INVESTMENTS, LLC,                     )
                                           )
              Defendant.                   )

## COMPLAINT

COMES NOW, KIM TURNER, by and through the undersigned counsel, and files this, her Complaint against Defendant, RNDM INVESTMENTS, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, KIM TURNER (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Dallas, Texas (Denton County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing,

1

grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes")

7.      Defendant, RNDM INVESTMENTS, LLC (hereinafter "RNDM INVESTMENTS, LLC"), is a foreign limited liability company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, RNDM INVESTMENTS, LLC, may be properly served with process via its registered agent for service, to wit:  Ramesh N. Rana, Registered Agent, 1016 Apache Lake Drive, Carrollton, TX  75010.

## FACTUAL ALLEGATIONS

9.      On or about September 25, 2019, Plaintiff was a customer at "Cafémandu," a business located at 3711 N. Belt Line Road, Irving, Dallas, TX  75038, referenced herein as the "Cafémandu."

10.     Plaintiff lives only 18 miles from Cafémandu and the Property.

11.     RNDM INVESTMENTS, LLC is the owner or co-owner of the real property and improvements that Cafémandu is situated upon and that is the subject of this action, referenced

herein as the "Property."

12.     Plaintiff has visited Cafémandu and the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months or sooner, as soon as the barriers to access detailed in this Complaint are removed and the Property are accessible again.  The purpose of the revisit is to be a regular customer, to determine if and when the Property are made accessible, and to maintain standing for this lawsuit for Advocacy Purposes.

13.     Plaintiff intends on revisiting the Property and Cafémandu to purchase goods and/or services as a regular customer living in the vicinity as well as for Advocacy Purposes, but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

14.     Plaintiff's access to the business(es) and public accommodations located at 3711 N. Belt Line Road, Irving, Dallas, TX   75038, Dallas County Property Appraiser's parcel number 32160760003B10000 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendant, RNDM INVESTMENTS, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

15.     Plaintiff travelled to the Property and Cafémandu as a customer and as an independent advocate for the disabled, encountered the barriers to access at the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will

continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

### COUNT I
### VIOLATIONS OF THE ADA AND ADAAG

16.    On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

17.    Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)   historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)  discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)   individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

18.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of

discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

19.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

20.      The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

21.      The Property is a public accommodation and service establishment.

22.      Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

23.      Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

24.      The Property must be, but is not, in compliance with the ADA and ADAAG.

25.      Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access,

dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

26.     Plaintiff intends to visit the Property again within six months or sooner as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

27.     Defendant, RNDM INVESTMENTS, LLC, has discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

28.     Defendant, RNDM INVESTMENTS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, RNDM INVESTMENTS, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

29.     A specific list of unlawful physical barriers, dangerous conditions and ADA

violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     Near Cafemandu, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ii)    Near Cafemandu, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(iii)   Near Cafemandu, the Property has an accessible ramp that lacks finished edges or edge protection on one side and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(iv)    Between Autozone and CafeMandu, the Property has an accessible ramp connecting exterior elements of the shopping center of the Property with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(v)     Between Autozone and CafeMandu, the Property has an accessible ramp connecting exterior elements of the shopping center of the Property, the required

handrails on both sides of the accessible ramp are lower than the proper height in violation of Section 505.4 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(vi)     Between Autozone and CafeMandu, the Property has an accessible ramp connecting exterior elements of the shopping center of the Property, the ground surfaces at the base of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(vii)    Near AutoZone, the access aisle serving the accessible parking spaces is not at the same level as the parking spaces it serves due to the presence of a ramp, in violation of Section 502.4 of the 2010 ADAAG Standards.  This violation would make it difficult for Plaintiff to exit and enter his vehicle if parked at that accessible parking space.

(viii)   On the southern side of AutoZone, the accessible parking space and associated access aisle has an inverted slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ix)     Near AutoZone, there is at least one access aisle that has excessive vertical rises resulting from cracks in the concrete due to a failure of implementing an adequate policy of maintenance, and is in violation of Sections 303.2 and 502.4 of the 2010

ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(x)     Near Units 3717 and 3719, there are ramps where the required handrails on both sides of the accessible ramps are below the proper height and are in violation of Section 505.4 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(xi)    Near Unit 3719, the ground surfaces at the base of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(xii)   Near Unit 3719, the accessible parking space has a cross-slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xiii)  Near Unit 3719, the accessible parking space that does not have a properly marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the accessible entrances of the Property.

(xiv)   Near Unit 3719, the accessible parking space is not level due to the presence of an accessible ramp in the accessible parking space in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xv)     Near Unit 3719, the accessible curb ramp is improperly protruding into the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.   This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xvi)    Near Unit 3719, due to the fact the accessible curb ramp protrudes into the accessible parking space, when a vehicle parks in this space, the vehicle blocks the accessible route to this accessible ramp, as a result, this accessible parking space is not located on the shortest distance to an accessible route in violation of section 208.3.1 of the 2010 ADAAG Standards.

(xvii)   Near Unit 3719, there is an excessive vertical rise at the top of the accessible ramp in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

(xviii)  At Unit 3711, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(xix)    At the northern end of the Property, the accessible parking space and associated access aisle have a surface slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xx)     At the northern end of the Property, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9

of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(xxi)   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**UNIT 3711 RESTROOMS**

(i)   The restrooms lack proper door hardware in violation of Section 404.2.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(ii)   The mirror in the bathrooms exceeds the maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This violation made it difficult for the Plaintiff and/or any disabled individual to properly utilize public features of the restroom.

(iii)   The hand operated flush control is not located on the open side of the accessible toilet in violation of Section 604.6 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(iii)   The door exiting the restroom lacks a proper minimum maneuvering clearance, due to the proximity of the door hardware to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards.  This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

30.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

31.   Plaintiff requires an inspection of the Property in order to determine all of the

discriminatory conditions present at the Property in violation of the ADA.

32.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

33.      All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

34.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

35.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, RNDM INVESTMENTS, LLC, has the financial resources to make the necessary modifications.

36.     Upon information and good faith belief, the Property has been altered since 2010.

37.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

38.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant, RNDM INVESTMENTS, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

39.     Plaintiff's requested relief serves the public interest.

40.     The benefit to Plaintiff and the public of the relief outweighs any resulting

detriment to Defendant.

41.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, RNDM INVESTMENTS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

42.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, RNDM INVESTMENTS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, RNDM INVESTMENTS, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, RNDM INVESTMENTS, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, RNDM INVESTMENTS, LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: October 23, 2019.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Northern District of Texas ID No. 54538FL
*Attorney-in-Charge of Plaintiff*
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


Law Offices of
LIPPE & ASSOCIATES

/s/  Emil Lippe, Jr.
Emil Lippe, Jr., Esq.
State Bar No. 12398300
Lippe & Associates
12222 Merit Drive, Suite 1200
Dallas, TX 75251
Tel: (214) 855-1850
Fax: (214) 720-6074
emil@texaslaw.com


ATTORNEYS FOR PLAINTIFF
KIM TURNER